## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

In re:
    RICHARD E. YUNKER and
    JULIA R. YUNKER,
    Debtors

Chapter 13
No. 20-10895

WILMINGTON SAVINGS FUND SOCIETY, )
FSB, AS OWNER TRUSTEE OF THE )
RESIDENTIAL CREDIT OPPORTUNITIES )
TRUST V-C, )
                Movant )
                 )
         v. )
                 )
RICHARD E. YUNKER and JULIA R. YUNKER, )
           Respondents )

## MOTION FOR RELIEF FROM AUTOMATIC STAY

To the Honorable Janet E. Bostwick, Bankruptcy Judge:

Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C ("Wilmington"), a secured creditor in the above-captioned matter, hereby moves pursuant to 11 U.S.C. § 362(d)(1), Bankruptcy Rule 4001 and Local Rule 4001-1, for relief from the automatic stay for the purpose of exercising any and all rights it holds as a secured party with an interest in real property, including the power of sale contained in the mortgage from Richard E. Yunker and Julia R. Yunker ("Debtors") dated October 21, 2009, and recorded with the Essex County Registry of Deeds in Book 29018, Page 189, and secured by the property located at 190 Norfolk Avenue, Swampscott, Massachusetts 01907 (the "Property") under applicable non-bankruptcy law and in accordance with the loan documents executed by Debtor prior to filing a petition in the instant case.

As grounds for this Motion, Wilmington states as follows:

1

1.      Wilmington is an investor with an address c/o American Mortgage Investment Management Partners, LLC ("AMIP"), PO Box 2741, Seal Beach, California 90740.  AMIP services the loan on the Property referenced in this motion for Wilmington.  In the event the automatic stay in this case is modified, this case is dismissed, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the Property, the foreclosure will be conducted in the name of Wilmington.  Wilmington, directly or through an agent, has possession of the promissory note.  Wilmington will enforce the promissory note as transferee in possession.  Wilmington is the assignee of the mortgage.

2.      Counsel for AMIP and Wilmington collects debts for mortgage lenders and any information obtained in that regard will be used for that purpose.

3.      Upon information and belief, the Debtors reside at the Property.

4.      The above-captioned case was commenced on March 30, 2020, by filing of a Petition for Relief pursuant to Chapter 13 of Title 11 of the United States Code.

5.      The Debtor is the sole owner of the Property.

6.      On or about October 21, 2009, Debtor Richard E. Yunker executed a Promissory Note to Union Trust Mortgage Corporation in the amount of $338,166.00 (the "Note").  A true and accurate copy of the Note is attached hereto as Exhibit A.

7.      The Note is secured by a mortgage on the Property given by the Debtors to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Union Trust Mortgage Corporation.  The mortgage is recorded with the Essex County Registry of Deeds in Book 29018, Page 189.  A true and accurate copy of the Mortgage is attached hereto as Exhibit B.

8.    Wilmington obtained the Mortgage, together with the underlying Note, by

Assignment dated June 22, 2011, recorded in Book 30485, Page 66;

Assignment dated October 11, 2016, recorded in Book 35604, Page 547;

Assignment dated December 12, 2016, recorded in Book 35604, Page 550;

Assignment dated December 31, 2018, recorded in Book 37323, Page 505; and

Assignment dated December 31, 2018, recorded in Book 37323, Page 507.

True and accurate copies of the Assignments are attached hereto as <u>Exhibits C,</u>

<u>D, E, F and G.</u>

9.    The Note and Mortgage are now and continually have been in default since July

1, 2018, due to Debtor's failure to make payments thereunder.

10.    The Debtor's Chapter 13 Plan has not yet been approved.

11.    In support of this Motion, Wilmington provides the following information:

a.    As of March 30, 2020, there was due and owing pursuant to the Note, the

amount of $448,498.27 pursuant to the Proof of Claim, plus accruing

interest and expenses, including a reasonable attorney's fee.

b.    The number and amount of pre-petition monthly payments owed to

Wilmington are twenty-two (22) payments and escrow advances totaling

$56,908.44.

c.    The monthly payment is $1,500.75.

d.    Post-petition payments are due as follows:

- May 1, 2020 in the amount of $1,500.75;

- June 1, 2020 in the amount of $1,500.75; and

- July 1, 2020 in the amount of $1,500.75.

3

- The total amount of additional post-petition payments due as of the date of filing this Motion is $4,502.25.

11.     Wilmington is entitled to relief from the automatic stay under 11 U.S.C., §362(d)(1) for "cause" on account of the lack of adequate protection of Wilmington's interest in the Property. Accordingly, Wilmington is seeking relief from the automatic stay under § 362(d)(1) for the purpose of exercising its non-bankruptcy law rights as a secured party against the Property in accordance with the Note and Mortgage.

WHEREFORE, Wilmington respectfully requests that this Court enter an Order granting Wilmington relief from the automatic stay pursuant to 11 U.S.C. §362(d) so that it, and its successors and assigns, may: (1) exercise its rights pursuant to the Note and Mortgage in accordance with applicable state and federal law, including, without limitation, taking possession of the mortgage premises and/or foreclosing or accepting a deed in lieu of foreclosure of its mortgage on said premises; (2) preserve its right to seek any deficiency to the extent permitted by state and federal law; (3) bringing such action, including, without limitation, summary process proceedings, as are permissible by law; (4) allow all communications sent by Secured Creditors in connection with proceeding against the Property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to the Debtors; and (5) that the Court order such relief as may be just and property. Wilmington further requests that this Court waive the 14 day requirement under Rule 4001(a)(3).

WILMINGTON SAVINGS FUND SOCIETY,
FSB, AS OWNER TRUSTEE OF THE
RESIDENTIAL CREDIT OPPORTUNITIES
TRUST V-C
By its attorney,

/s/ Michael J. Murphy

_____

Michael J. Murphy, B.B.O.#: 547078
Murphy & Lupan, P.A.
5 Commonwealth Road
Natick, MA  01760
Tel: (508) 650-9252
Fax: (508) 650-9846
Email:  mjmurphy@gmllaw.com

Date:   July 28, 2020

## CERTIFICATE OF SERVICE

I, Michael J. Murphy, Attorney for the Creditor, Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C, do hereby certify that pursuant to MLBR 3015, Appendix 1, Section 13-7, I have served a copy of the attached pleading, by email, or by mail, postage prepaid, to all parties listed on the following service list.

Signed under the penalties of perjury.

/s/ Michael J. Murphy_____
Michael J. Murphy, Esq.

Dated:  July 28, 2020

SERVICE LIST

Carolyn A. Bankowski, Esq.
Standing  Chapter 13 Trustee
BY ECF TRANSMISSION

Carolyn Bankowski-13-12
13trustee@ch13boston.com

John Fitzgerald
USTPRegion01.BO.ECF@USDOJ.GOV

Colin Creager on behalf of Debtors Richard E. Yunker and Julia R. Yunker
cdc@mass-legal.com

# **EXHIBIT A**

*5694481*
*#1*

# NOTE

| FHA CASE NO.<br>**251-4034607-703** |
| --- |

**10/21/2009**

[Date]

**190 Norfolk Avenue, Swampscott, MA  01907**

[Property Address]

## 1.  PARTIES
   "Borrower" means each person signing at the end of this Note, and the Person's successors and assigns. "Lender" means

### UNION TRUST MORTGAGE CORPORATION

and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST
   In return for a loan received from Lender, Borrower promises to pay the principal sum of  THREE HUNDRED THIRTY-EIGHT THOUSAND, ONE HUNDRED, SIXTY-SIX AND 00/100............................................

Dollars

(U.S. **$338,166.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of    FIVE AND ONE HALF

percent **(5.500%)** , per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT
   **(A) Time**
   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **12/01/2009** , Any principal and interest remaining on the first day of **11/01/2039**, will be due on that date, which is called the "Maturity Date."

   **(B) Place**
   Payment shall be made at **UNION TRUST MORTGAGE CORPORATION, 5 ESSEX GREEN DRIVE, PEABODY, MA 01960** or at such other place as Lender may designate in writing by notice to Borrower.

   **(C) Amount**
   Each monthly payment of principal and interest will be in the amount of **$1,920.07** , This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**MULTISTATE FHA FIXED RATE NOTE**                                              **6/96**

*(Page 1 of 3pages)*

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Growing Equity Allonge                   ☐ Graduated Payment Allonge

☐ Other [specify]

## 5.   BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.   BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **fifteen** calendar days after the payment is due, Lender may collect a late charge in the amount of        percent ( **3.000 %** ) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.   WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**MULTISTATE FHA FIXED RATE NOTE**                                      6/96

*(Page 2 of 3 pages)*



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Witness:

_____ (Seal)
Richard E. Yunker **-Borrower**
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

_____ (Seal)
**-Borrower**

_____ (Seal)
**-Borrower**

_____ (Seal)
**-Borrower**

PAY TO THE ORDER OF

Affiliated Mortgage Company

WITHOUT RECOURSE
UNION TRUST MORTGAGE CORPORATION

RONELLEN A. GAGNON
VICE PRESIDENT

**MULTISTATE FHA FIXED RATE NOTE**                                             6/96
*(Page 3 of 3 pages)*

Without recourse, pay to the order of Wells Fargo Bank, N.A.

Affiliated Mortgage Company

*Cathy Knight*

Cathy Knight, V.P.

Secretary of Housing and Urban
Development of Washington, D.C.,
and his/her successors and assigns

WITHOUT RECOURSE
PAY TO THE ORDER OF
Wells Fargo Bank, N.A.

By *Lori K. Venegonia*
Lori K. Venegonia
Vice President Loan Documentation

PAY TO THE ORDER OF

WITHOUT RECOURSE
UNION TRUST MORTGAGE CORPORATION

RONELLEN A. GAGNON
VICE PRESIDENT

LOAN # 1812983

ALTERNATE LOAN # 217603018

# ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER:  RICHARD E YUNKER

NOTE DATE: 10/21/2009

ORIGINAL PRINCIPAL BALANCE: $338,166.00

PAY TO THE ORDER OF:  BAYVIEW ACQUISITIONS LLC

WITHOUT RECOURSE

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

By Bayview Loan Servicing, LLC, its Attorney in Fact

BY: _____

NAME: Peter Suarez
TITLE: Assistant Vice President

PAY TO THE ORDER OF:  BAYVIEW LOAN SERVICING, LLC

WITHOUT RECOURSE

BAYVIEW ACQUISITIONS LLC

BY: _____

NAME: Peter Suarez
TITLE: Assistant Vice President

PAY TO THE ORDER OF:

WITHOUT RECOURSE

BAYVIEW LOAN SERVICING, LLC

BY: _____

NAME: Peter Suarez
TITLE: Assistant Vice President

# EXHIBIT B

*3000025952*   *VDB*
*Yunker*
*Wells*
*21760 3018*

2009102600460 Bk:29018 Pg:189
10/26/2009 01:01 MTG Pg 1/8

Union Trust Mortgage Corporation
Five Essex Green Drive
Peabody, MA  01960

Property Address: 190 Norfolk Avenue,
Swampscott, Massachusetts 01907

_____[Space Above This Line For Recording Data]_____

## MORTGAGE

MIN: 100249501000105771

FHA CASE NO.: 251-4034607-703

This Mortgage ("Security Instrument") is given on 21st day of October, 2009.

The Mortgagor is Richard E. Yunker and Julia R. Yunker ("Borrower").

This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. MERS is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Union Trust Mortgage Corporation ("Lender") is organized and existing under the laws of Commonwealth of Massachusetts, and has an address Five Essex Green Drive, Peabody, Massachusetts 01960.  Lender's license number is MC0192.

Mortgage Broker is (No Mortgage Broker), Mortgage Broker's post office address is (N/A) and Mortgage Broker's license number is (N/A). Mortgage Originator is Elizabeth Brotchie, Mortgage Originator's post office address is 5 Essex Green Drive, Peabody MA 01960 and Mortgage Originator's license number is MLO161050.

Borrower owes Lender the principal sum of Three Hundred Thirty-Eight Thousand One Hundred Sixty-Six and 00/100 Dollars Dollars (U.S. $338,166.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on November 1, 2039. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with mortgage covenants and with the power of sale, the following described property located in Essex County, Massachusetts:

### SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

which has the address of  190 Norfolk Avenue, Swampscott, Massachusetts 01907
("Property Address")

FHA Massachusetts Security Instrument (MERS Modified)
©1986-2009 Standard Solutions, Inc. 781-324-0550

FHMRMtMA

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required by Paragraph 4. In any year which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

FHA Massachusetts Security Instrument (MERS Modified)
©1986-2009 Standard Solutions, Inc. 781-324-0550                    FHMRMtMA

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either to (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order

provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under *the Note and this Security Instrument shall be paid to the entity legally entitled thereto.*

  **7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

  If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other *covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly* affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or *regulations*), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

  Any amounts disbursed by lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

  Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests *in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's* opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

  **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

  **9. Grounds for Acceleration of Debt.**

  **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, *require immediate payment in full of all sums secured by this Security Instrument if:*

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

  **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St.Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3(d)) and with the prior approval of the *Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:*

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

*(c) No Waiver.* If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

*(d) Regulations of HUD Secretary.* In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

*(e) Mortgage Not Insured.* Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **Sixty (60) Days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **Sixty (60) Days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) *is not* personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

FHA Massachusetts Security Instrument (MERS Modified)
©1986-2009 Standard Solutions, Inc. 781-324-0550                                    FHMRMtMA

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential use and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law, in the manner provided by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

**21.   Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider           ☐ Graduated Payment Rider     ☐ Growing Equity Rider

☐ Planned Unit Development Rider   ☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____          _____
Witness                             Richard E. Yunker

                                    _____
                                    Julia R. Yunker

——————————— [Space Below This Line For Acknowledgment] ———————————

## Commonwealth of Massachusetts                                    Essex, ss:

On this 21st day of October, 2009, before me, the undersigned notary public, personally appeared Richard E. Yunker and Julia R. Yunker, proved to me through satisfactory evidence of identification, which were ☑ Driver's License; ☐ State ID; ☐ Passport; ☐ Other Government Issued ID; ☐ Other, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

                                    _____
                                    Suzanne A. Stark, Notary Public
                                    My Commission Expires: March 7, 2014
                                         Suzanne A. Stark
                                         Notary Public
                                    Commonwealth of Massachusetts
                                      My Commission Expires
                                         March 7, 2014

FHA Massachusetts Security Instrument (MERS Modified)
©1986-2009 Standard Solutions, Inc. 781-324-0550                          FHMRMtMA

## Exhibit A - Property Description

Closing date:        October 21, 2009

Borrower(s):         Richard E. Yunker

Property             190 Norfolk Avenue, Swampscott, Massachusetts 01907
Address:

The land with the buildings thereon in Swampscott, Essex County, Massachusetts bounded and described as follows:

**SOUTHWESTERLY**    by Norfolk Avenue, 50 feet;

**NORTHWESTERLY**    by Lot 47 on the Plan hereinafter mentioned, 110 feet;

**NORTHEASTERLY**    by land now or formerly of the Boston and Maine Railroad Co., 42.97 feet; and

**SOUTHEASTERLY**    by Lot 49 on said plan, 109.96 feet.

Be all of said measurements more or less, or however otherwise bounded and described. Being the premises shown as Lot 48 on a plan for Subdivision of Proeprty of the Stetson Land Company, situated in Swampscott, Mass., by Charles Gay, C.E. dated November 1, 1892 and recorded with Essex South Registry of Deeds, Plan Book 10 Plan 7, less that portion thereof which was conveyed to said Boston and Maine Railroad Co. by Emma N. Metcalf by deed dated January 19, 1903, recorded with said Deeds in Book 1694 Page 274.

*Meaning and intending to convey and hereby conveying the same premises conveyed to us by deed of Oeter Mastromatteo and Jayne V. Mastromatteo dated August 18, 2006 and recorded with Essex South Registry of Deeds in Book 25995 Page 237.*

EXHIBIT C

E
2

MC 7

2011062400110 Bk:30485 Pg:66
06/24/2011 11:06 ASGT Pg 1/2

When recorded, return to:

Wells Fargo Home Mortgage
PO Box 1629, x9999-018
Minneapolis, MN  55440-9790

Prepared by: Ryan Amato

MIN: 100249501000105771
Phone:  1-888-679-7377

(Space above this line for county recorder use only)

## ASSIGNMENT OF MORTGAGE

For value received, **Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for Union Trust Mortgage Corporation**, its successors and assigns, whose address is PO Box 2026 Flint, MI, 48501-2026, the undersigned hereby grants, assigns, and transfers to:

**Wells Fargo Bank, NA**, 1 Home Campus, Des Moines, IA  50328

herein "Assignee" it's successors and/or assigns, all its right, title, and all beneficial interest under that certain Mortgage, herein "Security Instrument" executed by Richard E. Yunker and Julia R. Yunker, dated October 21, 2009, in the amount of $338,166.00 and given to Mortgage Electronic Registration Systems, Inc., as nominee for Union Trust Mortgage Corporation and recorded on October 26, 2009 as Document/Instrument Number 2009102600460 in Book 29018, Page 189, of Official Records in the County Recorder's office of Essex County, Massachusetts, describing land therein as:

| | |
|---|---|
| Property Address: | 190 Norfolk Avenue, Swampscott, MA 01907 |
| Parcel ID #: | N/A |
| Legal Description: | See Attached |

Signed this 6/22/2011

Mortgage Electronic Registration Systems, Inc.

*Kathryn Churchill*

Kathryn Churchill

, Assistant Secretary

## MASSACHUSETTS ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MINNESOTA
COUNTY OF DAKOTA

} X  Gaoaong Vang

On this 6/22/2011 before me, X , personally appeared Kathryn Churchill Assistant Secretary, Mortgage Electronic Registration Systems, Inc., ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public: Gaoaong Vang

My commission Expires: 01-31-2016
Commission # 31043329

GAOAONG VANG
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2016

Page 1 of 2

Legal Description

### Exhibit A - Property Description

| | |
|---|---|
| Closing date: | October 21, 2009 |
| Borrower(s): | Richard E. Yunker |
| Property Address: | 190 Norfolk Avenue, Swampscott, Massachusetts 01907 |

The land with the buildings thereon in Swampscott, Essex County, Massachusetts bounded and described as follows:

**SOUTHWESTERLY**      by Norfolk Avenue, 50 feet;

**NORTHWESTERLY**      by Lot 47 on the Plan hereinafter mentioned, 110 feet;

**NORTHEASTERLY**      by land now or formerly of the Boston and Maine Railroad Co., 42.97 feet; and

**SOUTHEASTERLY**      by Lot 49 on said plan, 109.96 feet.

Be all of said measurements more or less, or however otherwise bounded and described. Being the premises shown as Lot 48 on a plan for Subdivision of Proeprty of the Stetson Land Company, situated in Swampscott, Mass., by Charles Gay, C.E. dated November 1, 1892 and recorded with Essex South Registry of Deeds, Plan Book 10 Plan 7, less that portion thereof which was conveyed to said Boston and Maine Railroad Co. by Emma N. Metcalf by deed dated January 19, 1903, recorded with said Deeds in Book 1694 Page 274.

Meaning and intending to convey and hereby conveying the same premises conveyed to us by deed of Oeter Mastromatteo and Jayne V. Mastromatteo dated August 18, 2006 and recorded with Essex South Registry of Deeds in Book 25995 Page 237.

EXHIBIT D

SO.ESSEX #226 Bk:35604 Pg:547
01/11/2017 11:36 AM ASGT Pg 1/3
eRecorded

Claim Date:    10/6/2016                    FHA Case No.: 251-4034607-703

(81298✗✗                    Servicer Loan No.:

When Recorded Return To:                    This instrument prepared by:
RICHMOND MONROE GROUP, INC.                 Wells Fargo Home Mortgage
P.O. BOX 458                                CAROLYN SANDERS
KIMBERLING CITY, MO 65686
Ref#: 0005050000000613 / 001812983A         1000 Blue Gentian Rd #200
                                            Eagan, MN 55121-4400

### ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

WELLS FARGO BANK, N.A., whose address is 1 Home Campus, Des Moines, IA 50328
("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable
consideration received by Assignor, hereby assigns, transfers, sets over and conveys to THE
SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 7th Street, S.W.,
Washington, D.C. 20410 ("Assignee"), and its successors and assigns, without recourse, the
following:

1.  that certain Mortgage dated OCTOBER 21, 2009, executed by RICHARD E. YUNKER AND
    JULIA R. YUNKER, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
    NOMINEE FOR UNION TRUST MORTGAGE CORPORATION, ITS SUCCESSORS AND
    ASSIGNS, having an original principal sum of $338166.00 with interest, secured thereby,
    and recorded on OCTOBER 26, 2009 as Instrument Number 2009102600460 and/or in
    Book/Volume/Liber/Reel 29018, at Page/Folio 189, among the land records of
    SOUTHERN ESSEX DISTRICT County, MA, as amended or modified (the "Mortgage"),
    which Mortgage secures that certain promissory note dated OCTOBER 21, 2009 (the
    "Note"); and

2.  such other documents, agreements, instruments and other collateral that evidence,
    secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage
    and/or the Note, including without limitation the title insurance policies and hazard
    insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

Property Address: 190 NORFOLK AVENUE, SWAMPSCOTT, MA 01907
Assessor's/Tax ID No.: N/A
Legal Description: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the ₁₁ᵗʰ day of October, 20 16 .

WELLS FARGO BANK, N.A.
By: _____
Name: Dereje D. Badada
Title: Vice President Loan Documentation


## NOTARY ACKNOWLEDGMENT


State of Minnesota      )
                        ), ss:
County of Dakota        )


On 10|11|2016 , before me, _____Jennifer Roe Anderson_____ , a Notary Public in the State of ___Minnesota___, personally appeared ___Dereje D. Badada_____ , Vice President Loan Documentation, for WELLS FARGO BANK, N.A. personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

Notary Public: _____Jennifer Rae Anderson_____
My Commission Expires: _1|31|2020_

[ SEAL ]

## Exhibit A – Legal Description

The land with the buildings thereon in Swampscott, Essex County, Massachusetts bounded and described as follows:

SOUTHWESTERLY     by Norfolk Avenue, 50 feet;

NORTHWESTERLY     by Lot 47 on the Plan hereinafter mentioned, 110 feet;

NORTHEASTERLY     by land now or formerly of the Boston and Maine Railroad Co., 42.97 feet; and

SOUTHEASTERLY     by Lot 49 on said plan, 109.96 feet.

Be all of said measurements more or less, or however otherwise bounded and described. Being the premises shown as Lot 48 on a plan for Subdivision of Property of the Stetson Land Company, situated in Swampscott, Mass., by Charles Gay, C.E. dated November 1, 1892 and recorded with Essex South Registry of Deeds, Plan Book 10 Plan 7, less that portion thereof which was conveyed to said Boston and Maine Railroad Co. by Emma N. Metcalf by deed dated January 19, 1903, recorded with said Deeds in Book 1694 Page 274.

Meaning and intending to convey and hereby conveying the same premises conveyed to us by deed of Oeter Mastromatteo and Jayne V. Mastromatteo dated August 18, 2006 and recorded with Essex South Registry of Deeds in Book 25995 Page 237.

EXHIBIT E

SO.ESSEX #227 Bk:35604 Pg:550
01/11/2017 11:36 AM ASGT Pg 1/3
eRecorded

Claim Date:    10/6/2016                FHA Case No.: 251-4034607-703

18129838                    Servicer Loan No.:

When Recorded Return To:                This instrument prepared by:
RICHMOND MONROE GROUP, INC.             Wells Fargo Home Mortgage
P.O. BOX 458
KIMBERLING CITY, MO 65686               CAROLYN SANDERS
Ref#: 0005050000003218 / 001812983B     1000 Blue Gentian Rd #200
                                        Eagan, MN 55121-4400

### ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 7th Street,
S.W., Washington, D.C. 20410 ("Assignor"), in consideration of Ten Dollars ($10.00) and other
good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and
conveys to Bayview Loan Servicing, LLC , whose address is 4425 Ponce de Leon Blvd, 5th Floor,
Coral Gables, FL 33146 ("Assignee"), and its successors and assigns, without recourse, the
following:

1.  that certain Mortgage dated OCTOBER 21, 2009, executed by RICHARD E. YUNKER AND
    JULIA R. YUNKER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
    NOMINEE FOR UNION TRUST MORTGAGE CORPORATION, ITS SUCCESSORS AND
    ASSIGNS, having an original principal sum of $338166.00 with interest, secured thereby,
    and recorded on OCTOBER 26, 2009 as Instrument Number 20091026004609 and/or in
    Book/Volume/Liber/Reel 29018, at Page/Folio 189, among the land records of
    SOUTHERN ESSEX DISTRICT County, MA as amended or modified (the "Mortgage"), which
    Mortgage secures that certain promissory note dated OCTOBER 21, 2009  (the "Note");
    and

2.  such other documents, agreements, instruments and other collateral that evidence,
    secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage
    and/or the Note, including without limitation the title insurance policies and hazard
    insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

Property Address: 190 NORFOLK AVENUE, SWAMPSCOTT, MA 01907
Assessor's/Tax ID No.: N/A
Legal Description: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the _____ *12* _____ day of _____ *Dec* _____ , *2016*.

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY ITS ATTORNEY IN FACT BAYVIEW LOAN SERVICING LLC.

BY: _____
       Robert G. Hall
       Vice President

Witness: _____
       **Pamela Freelain**

Witness: _____
       Jamie De Los Santos

## NOTARY ACKNOWLEDGMENT

STATE OF FLORIDA          )
                          )SS
MIAMI DADE COUNTY    )

**DEC 1 2 2016**                                    Rogelio A. Portal

On _____, before me, _____, a Notary Public in the State of <u>Florida</u>, personally appeared _____Robert G. Hall_____, as _____Vice President_____, of Bayview Loan Servicing LLC., By its Attorney in Fact for  The Secretary of Housing and Urban Development, personally know to me (or proved to me on the basis of satisfactory evidence) to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she /they executed the same in his/her/their authorized  capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

_____
Notary Public:                    Rogelio A. Portal
My Commission Expires: 8/25/2020

ROGELIO A. PORTAL
MY COMMISSION # FF 993630
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

[SEAL]

## Exhibit A – Legal Description

The land with the buildings thereon in Swampscott, Essex County, Massachusetts bounded and described as follows:

SOUTHWESTERLY     by Norfolk Avenue, 50 feet;

NORTHWESTERLY     by Lot 47 on the Plan hereinafter mentioned, 110 feet;

NORTHEASTERLY     by land now or formerly of the Boston and Maine Railroad Co., 42.97 feet; and

SOUTHEASTERLY     by Lot 49 on said plan, 109.96 feet.

Be all of said measurements more or less, or however otherwise bounded and described. Being the premises shown as Lot 48 on a plan for Subdivision of Proeprty of the Stetson Land Company, situated in Swampscott, Mass., by Charles Gay, C.E. dated November 1, 1892 and recorded with Essex South Registry of Deeds, Plan Book 10 Plan 7, less that portion thereof which was conveyed to said Boston and Maine Railroad Co. by Emma N. Metcalf by deed dated January 19, 1903, recorded with said Deeds in Book 1694 Page 274.

Meaning and intending to convey and hereby conveying the same premises conveyed to us by deed of Oeter Mastromatteo and Jayne V. Mastromatteo dated August 18, 2006 and recorded with Essex South Registry of Deeds in Book 25995 Page 237.

EXHIBIT F

SO.ESSEX #22 Bk:37323 Pg:505
02/12/2019 08:21 AM ASGT Pg 1/2
eRecorded

Total Pages: 2

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #: 1812983 / TS Ref #: 0008700000000157 / Client Ref #: 1812983C
MA/ESSEX SOUTHERN DISTRICT

Assignment Prepared on: December 21, 2018

**Assignor: BAYVIEW LOAN SERVICING, LLC**, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

**Assignee: BAYVIEW DISPOSITIONS IVB, LLC**, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 10/21/2009, in the amount of $338,166.00, executed by RICHARD E. YUNKER AND JULIA R. YUNKER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UNION TRUST MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 10/26/2009, Instrument #: 2009102600460, Book / Liber / Reel: 29018, Page / Image / Folio: 189 in ESSEX SOUTHERN DISTRICT County, State of Massachusetts.

Property Address: 190 NORFOLK AVENUE, SWAMPSCOTT, MA, 01907

The undersigned, affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW LOAN SERVICING, LLC

On: 12/31/2018

By: _____
Name: ESLOAN SOTOLONGO
Title:   ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On 12/31/2018, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Rogelio A. Portal
Notary Expires 8/25/2020 / #: FF 993630

ROGELIO A. PORTAL
MY COMMISSION # FF 993530
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

**Recording Requested By:**
AMIP MANAGEMENT

**When Recorded Return To:**
AMIP MANAGEMENT
3020 OLD RANCH PKWY
#180
SEAL BEACH, CA, 90740

190 NORFOLK AVENUE, SWAMPSCOTT, MA, 01907

Page: 2 of 2 / TS Ref #: 0008700000000157
**MA/ESSEX SOUTHERN DISTRICT**

EXHIBIT G

Total Pages: 2



SO.ESSEX #23 Bk:37323 Pg:507
02/12/2019 08:21 AM ASGT Pg 1/2
eRecorded

190 NORFOLK AVENUE, SWAMPSCOTT, MA, 01907

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #: 1812983 / TS Ref #: 0008700000000229 / Client Ref #: 1812983D
MA/ESSEX SOUTHERN DISTRICT

Assignment Prepared on: December 21, 2018

**Assignor:** BAYVIEW DISPOSITIONS IVB, LLC, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

**Assignee:** WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C, at C/O AMIP MANAGEMENT, 3020 OLD RANCH PKWY #180, SEAL BEACH, CA, 90740

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 10/21/2009, in the amount of $338,166.00, executed by RICHARD E. YUNKER AND JULIA R. YUNKER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UNION TRUST MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 10/26/2009, Instrument #: 2009102600460, Book / Liber / Reel: 29018, Page / Image / Folio: 189 in ESSEX SOUTHERN DISTRICT County, State of Massachusetts.

Property Address: 190 NORFOLK AVENUE, SWAMPSCOTT, MA, 01907

The undersigned, affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW DISPOSITIONS IVB, LLC

On: 12/31/2018

By: _____
Name: ESLOAN SOTOLONGO
Title:   ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On 12/31/2018, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW DISPOSITIONS IVB, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993630

ROGELIO A. PORTAL
MY COMMISSION # FF 993630
EXPIRES: August 25, 2020
Bonded Thru Notary Public Underwriters

**Recording Requested By:**
AMIP MANAGEMENT

**When Recorded Return To:**
AMIP MANAGEMENT
3020 OLD RANCH PKWY
#180
SEAL BEACH, CA, 90740

Page: 2 of 2 / TS Ref #: 0008700000000229

**MA/ESSEX SOUTHERN DISTRICT**

*OLF13 (Official Local Form 13)*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re  RICHARD E. YUNKER and

JULIA R. YUNKER

Debtor

Case No. 20-10895

Chapter  13

## MOTION FOR RELIEF FROM STAY - REAL ESTATE WORKSHEET

(To be attached to Motion for Relief from Stay)

I, Maxine Evans _____ of AMIP Management, LLC o/b/o Wilmington Savings Fund Society, FSB

(Name and Title)                                    (Name of Organization/Corporation/Moving Party)

(hereinafter, "Movant") hereby declare (or certify, verify, or state):

**BACKGROUND INFORMATION**

1.    (a)    Date chapter 13 petition was filed (If case has been converted from chapter 7 to chapter 13, provide date of petition and date of conversion): March 30, 2020

(b)    Address of real property which is the subject of this motion: _____

190 Norfolk Avenue, Swampscott, MA 01907

2.    (a)    Original Mortgagee's Name and Address: Union Trust Mortgage Corporation 5 Essex Green Drive, Peabody, MA 01960

(b)    Name and Address of Current Mortgage Holder: Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C

(c)    Name of Note Holder, if different than Mortgage Holder: _____

_____

3.    Date of Mortgage: October 21, 2009 _____

4.    Post-Petition payment address, if different than above: FCI Lender Services, Inc. PO Box 28720, Anaheim, CA 92809

5.    The manner in which the Movant perfected its interest in the property: Recorded Mortgage

6.    Other collateral securing the note: _____

_____

7.    Other liens and encumbrances affecting the property in the order of their priority:

| Names of Senior Lien holder | Amount Due | Source of Information (e.g., Schedules filed by Debtor(s), public records) |
|---|---|---|
|  |  |  |
|  |  |  |
| Names of Junior Lien holders |  |  |
| Bayview Loan Servicing, LLC | Unknown |  |
|  |  |  |
| Movant's Lien |  |  |

8.    Existence and Date of Recorded Homestead (if known): _____

**DEBT/VALUE REPRESENTATIONS**

9.    Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $ 61,410.69 _____

(Note: this amount may not be relied on as a "payoff" quotation.)

10.    (a)    Movant's estimated fair market value of the real property: $ 366,500.00 _____

(b)    Source of estimated fair market valuation: BPO _____

(c)    Liquidation value of the real property: $350,000.00 _____

**STATUS OF DEBT AS OF THE PETITION DATE**

11.　　(a)　　Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:
$448,498.27

　　　　(b)　　Amount of principal: $ 410,279.07

　　　　(c)　　Amount of interest: $ 15,017.34

　　　　(d)　　Amount of escrow (taxes and insurance): $ 22,521.26

　　　　(e)　　Amount of forced placed insurance expended by Movant: $_____

　　　　(f)　　Amount of Attorney's fees billed to Debtor(s) pre-petition: $ 4,900.34

　　　　(g)　　Amount of pre-petition late fees, if any, billed to Debtor(s): $ 720.32

12.　　Contractual interest rate: 2.00___ (If interest rate is (or was) adjustable, please list the
rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the
sheet as an exhibit to this form; please list the exhibit number here: _____

13.　　Explain any additional pre-petition fees, charges or amounts charged to the account of
the Debtor(s) and not listed above: _____

(If additional space is needed, list the amounts on a separate sheet and attach the sheet as an
exhibit to this form; list the exhibit number here: ____).

### AMOUNT OF ALLEGED POST-PETITION DEFAULT

### (AS OF <u>07/28/2020</u> MM/DD/YYYY)

14.    Date last payment was received: _____ (mm/dd/yyyy).

15.    Total number of post-petition payments due from the date of the filing of petition through the date of this Motion or (mm/dd/yyyy): _____.

### SCHEDULE OF POST-PETITION PAYMENTS IN DEFAULT

(Do not substitute computer generated internal accountings):

| Payment Due Date | Amt. of Payment Due | Amt. of Payment Rec'd | Date Payment Rec'd | Amt. Applied to Principal | Amt. Applied to Interest | Amt. Applied to Escrow | Late Fee Charged if any | Amt. Not Applied |
|---|---|---|---|---|---|---|---|---|
| 5/1/2020 | 1,500.75 | 0 | | | | | 45.02 | |
| 6/1/2020 | 1,500.75 | 0 | | | | | 45.02 | |
| 7/1/2020 | 1,500.75 | 0 | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Totals | $4,502.25 | $ | | $ | $ | $ | 90.04 | $ |

16.    Amount of Movant's Attorney's fees charged to Debtor to date for the preparation and filing of this Motion: $ <u>750.00</u>

17.    Other Attorney's fees charged to Debtor post-petition: $ _____

18.    Amount of Movant's post-petition inspection fees: $ _____

19.    Amount of Movant's post-petition appraisal/broker's price opinion: $ _____

20.    Amount of forced placed insurance or insurance provided by the Movant post-petition: $_____

21.    Sum held in suspense by Movant in connection with this contract, if applicable:

$ 614.96 _____

22. Amount of other post-petition advances or charges (e.g. real estate taxes, insurance):
   $ 25.00 _____

23. Total amount of postpetition default, including all payments, fees, and charges:
   $ 4,092.37 _____.

24. Amount and date of post-petition payments offered by the Debtor(s) and refused by the Movant: Amount(s) $_____

   Date(s): _____


**REQUIRED ATTACHMENTS TO MOTION**

   Attach the following documents to this motion and indicate the exhibit number associated with the documents:

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibits A-G .)

(2) Copies of documents establishing proof of standing to bring this motion if different from the above. (Exhibits_____.)

(3) Copies of documents establishing that Movant's interest in the real property is perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibits B-G .)


**CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS**

   The undersigned certifies that the information provided in this Worksheet and any exhibits attached to this Worksheet (other than transactional documents attached as required in paragraphs (1) through (3) above) are derived from records that (a) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters; and (b) were prepared and kept in the regular course of business.

   In the event the Worksheet is not fully completed, Movant shall explain the reasons therefor and the reasonable efforts made to obtain the information. _____

The undersigned further certifies that copies of any transactional documents attached to this Worksheet as required by paragraphs 1, 2, or 3, immediately above, are true and accurate copies of the original documents. The undersigned further certifies that the original documents are in Movant's possession, except as follows: _____.

**I/WE DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE AND CORRECT TO THE BEST OF MY/OUR KNOWLEDGE AND BELIEF.**

_____     ___7/28/20___
Signature                                              Date

Maxine Evans_____
Printed Name

_BK Manager_____
Title and Organization

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

    RICHARD E. YUNKER and
    JULIA R. YUNKER,
    Debtors

Chapter 13
No. 20-10895

WILMINGTON SAVINGS FUND SOCIETY, )
FSB, AS OWNER TRUSTEE OF THE )
RESIDENTIAL CREDIT OPPORTUNITIES )
TRUST V-C, )
                Movant )
                 )
    v. )
                 )
RICHARD E. YUNKER and JULIA R. YUNKER, )
             Respondents )

## WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST V-C CERTIFICATE OF CONFERENCE

TO THE HONORABLE JANET E. BOSTWICK, U.S. BANKRUPTCY COURT JUDGE:

Now comes Wilmington Savings Fund Society FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C ("Creditor"), a secured creditor and party in interest in the above-captioned matter, and pursuant to and in accordance with Massachusetts Local Bankruptcy Rules 13-16-1.(A)(1), hereby certifies that a conference on Creditor's Motion for Relief From Stay was held by email exchange beginning on July 10, 2020 and ending on July 15, 2020, between counsel for the Creditor, Michael J. Murphy, and counsel for the Debtors, Colin Creager.

                                    **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS
                                    OWNER TRUSTEE OF THE RESIDEINTAIL
                                    CREDIT OPPORTUNITIES TRUST V-C**

By its Attorneys,


By:  */s/ Michael J. Murphy*
    Michael J. Murphy, B.BO. #547078
    Murphy & Lupan, P.A.
    5 Commonwealth Road, 4th Floor
    Natick, MA  01760
    (508) 650-9252

Date:   July 29, 2020